**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MONROE BANK & TRUST,**

                  **Plaintiff(s),**          **CASE NUMBER: 07-12073**
                                                      **HONORABLE VICTORIA A. ROBERTS**

**v.**

**JESSCO HOMES OF OHIO, LLC and**
**JEFFREY STAHL,**

                  **Defendant(s).**

_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.**      **INTRODUCTION**

      This matter is before the Court on Plaintiff Monroe Bank & Trust's ("MB&T")

"Motion for Summary Judgment."  (Doc. #18).  MB&T seeks summary judgment on: (1)

its claim against Jessco Homes of Ohio, LLC ("Jessco of Ohio") for breach of the

Commercial Promissory Note ("Note"); (2) its claim against Jeffrey Stahl ("Stahl") for

breach of the Commercial Loan Guaranty ("Guaranty"); and (3) Jessco of Ohio and

Stahl's (collectively "Defendants") counterclaims for fraudulent misrepresentation,

innocent misrepresentation, and rescission.

      For the following reasons, MB&T's motion is **GRANTED IN PART AND DENIED**

**IN PART**.

**II.**      **BACKGROUND AND PROCEDURAL HISTORY**

      Jessco of Ohio is a newly-established company that builds homes.  Stahl is the

managing member of Jessco of Ohio and Jessco, Inc. ("Jessco"), a company that builds

1

homes in Charleston, South Carolina.  Jon Leidel ("Leidel") is the project manager for Jessco of Ohio.  Scott Prephan ("Prephan") is the managing member of Prephan Property Group, LLC.

**A.    Prephan Sells Woodland Villas Subdivision to Jessco of Ohio**

Prephan obtained a $1.5 million loan from MB&T to purchase Woodland Villas Subdivision ("Woodland Villas").  Prephan's loan included a provision that interest would be carried for one year after the loan closed.  The "interest carry" provision meant Prephan did not have to pay interest on the loan for a period of one year.  When the interest carry provision was near its expiration date, Prephan sought to sell Woodland Villas.  Prephan did not have the cash to pay the interest on the loan.

On April 5, 2006, Stahl signed a Real Estate Purchase Agreement ("Purchase Agreement").  Stahl agreed to purchase Woodland Villas from Prephan for $1,525,000.00.  The Purchase Agreement required Stahl to apply for a loan through MB&T.

In May 2006, Prephan introduced Stahl to Larry Hofmann ("Hofmann"), MB&T's Vice President.  Prephan asked Hofmann if MB&T would finance the purchase of Woodland Villas.

MB&T performed a credit check on Jessco, and a loan committee approved the loan on June 21, 2006 with Jessco as the borrower and the co-owners of Jessco, Prephan and his brother, as the guarantors.  After the loan was approved, the borrower was changed from Jessco to Jessco of Ohio and Stahl became the only guarantor.  MB&T never performed a credit check on Jessco of Ohio.  In addition, MB&T did not follow its lending guidelines when it granted Jessco of Ohio's request for 100%

2

financing.  MB&T usually requires at least a 10% cash contribution for a brand-new customer.

**B.     Stahl Signs a General Durable Power of Attorney**

Because Stahl resides in South Carolina, he believed it would be more convenient for Leidel to sign the closing documents.  On October 5, 2006, Stahl signed a General Durable Power of Attorney ("Power of Attorney") for the Note and the Guaranty.  The Power of Attorney appointed Leidel attorney-in-fact for Stahl and Jessco of Ohio.  Leidel had the power to:

> Execute any and all documents required to consummate the purchase and financing of the Woodland Villas Condominium project in Bedford Township, Monroe County, Michigan, including but not limited to the following: (a) any promissory notes to Monroe Bank & Trust or Prephan Property Group, L.L.C.; (b) any conventional mortgages on the aforementioned real estate securing said notes, and (c) all forms, affidavits, closing statements, personal guarantees, and any other documents that may be required, pertaining to said transaction[.]

**C.     Closing on the Loan**

Leidel received the loan documents on October 3, 2006.  He did not review the documents nor did he forward the documents to Stahl.

The loan closed on October 6, 2006.  Leidel says he asked Hofmann before signing the loan documents if the loan contained an interest carry provision. Leidel says Hofmann told him that provision was not in the documents, and Stahl knew it was not there.

Although Leidel had "some doubt" concerning Hofmann's representation that Stahl knew there was no interest carry provision on the loan, he did not confirm that representation with Stahl; Leidel trusted Hofmann.

3

While Stahl told Leidel approximately one month before the closing that he should not sign the documents if the loan did not contain an interest carry provision, Leidel nonetheless signed a Note for $1,525,000.00 and a Guaranty, and the Note did not have the interest carry provision in it.  Consequently, Jessco of Ohio was required to make interest payments beginning November 6, 2006. The Guaranty says:

> [Stahl] in order to induce [MB&T] to extend . . . financial accommodations to [Jessco of Ohio], hereby guarantees to [MB&T] the full and prompt payment of all loans, drafts, overdrafts, notes, bills, and all other debts, obligations, and liabilities of every kind and description . . . granted by [MB&T] to [Jessco of Ohio].  [Stahl] also agrees to pay all interest, fees, charges, actual attorney fees, and collection costs.  This Guaranty is unconditional and absolute.  It is understood that this Guaranty shall cover all obligations of [Jessco of Ohio] to [MB&T].

### D.    Interest Carry Provision on the Loan

In November 2006, Stahl received an interest-payment invoice for $11,490.45. Stahl called Hofmann to inquire about the payment.  Hofmann informed Stahl that he had to include interest payments on the loan since it was financed one hundred percent.

Stahl says he is not responsible for the interest payments because he had an oral agreement with Hofmann that no interest would be due for one year.  Stahl says he made it "crystal clear" to Hofmann that no interest was a vital part of the loan since Jessco of Ohio had limited cash flow.  According to Stahl, Hofmann: (1) consistently assured him that the loan contained an interest carry provision; and (2) said the loan was approved with an interest carry provision.

In a letter dated February 12, 2007, MB&T notified Stahl and Jessco of Ohio that it declared the Note immediately due and payable.  Subsequently, Jessco of Ohio and/or Stahl paid $126,969.44 in interest.

4

**E.      Procedural History**

On April 9, 2007, MB&T filed a Complaint against Defendants in Monroe Circuit Court.  The Complaint alleges Jessco of Ohio breached the Note and Stahl breached the Guaranty.  MB&T seeks $1,628.617.89 plus attorneys fees and real estate taxes.

Defendants removed the action to this Court on May 11, 2007.  On May 14, 2007, Defendants filed three counterclaims for fraudulent misrepresentation, innocent misrepresentation, and rescission.

MB&T filed this motion on September 2, 2008.

**III.    STANDARD OF REVIEW**

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty*

5

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate.  *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV.  SUMMARY JUDGMENT ON MB&T'S CLAIMS

### A.  Breach of the Note (Count I)

MB&T's claim that Jessco of Ohio breached the Note hinges on whether MB&T can prove the elements necessary to succeed on a breach of contract claim.

MB&T must first establish the elements of a valid contract.  *Parson v. Urban Ins. Adjusters, Inc.*, 2007 WL 3088588 at *1 (Mich.App. Oct. 23, 2007) (quoting *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003)).  "In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 187 Mich.App. 418, 422 (1991) (citing *Detroit Trust Co. v. Struggles*, 289 Mich. 595 (1939)).  Further, a valid contract requires a meeting of the minds on all essential terms.  *Kloian v. Domino's Pizza L.L.C.*, 273 Mich.App. 449, 453 (2006) (citing *Burkhardt v. Bailey*, 260 Mich.App. 636, 655 (2004)).  "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich.App. 543, 548 (1992) (citations omitted).

**1.    Meeting of the Minds Between Stahl and Hofmann**

Citing *Fyan v. McNutt*, 266 Mich. 411 (1934), Defendants say the Note does not constitute a valid contract because Hofmann fraudulently represented to Stahl that the Note contained the no interest for a year provision.  Defendants say the provision is an essential term Stahl believed was in the Note when he gave Leidel the authority to sign the closing documents.  Because the interest carry provision was not in the Note when Leidel signed it, Defendants argue there was no meeting of the minds.

The plaintiff in *Fyan* woke defendant up at approximately 1:00 a.m., falsely told her she had to sign the contract because it had to be in Detroit the following morning, led defendant to believe the deal would "fall through" if it was not signed immediately, refused defendant's request to keep the contract until the morning so somebody could review it, and did not leave defendant a copy of the contract.  *Fyan*, 266 Mich. at 408-09.  The *Fyan* court held fraud is not easily defined because it is determined by the parties, their capacities, and relation to each other.  *Id.* at 410.  The contract in *Fyan* was held to be invalid because it was not made in good faith, and defendant did not have the opportunity to exercise her own free will.  *Id.* at 411.  "When false representations are made in connection with an attempt to 'high pressure' an individual into an agreement, it cannot be said that freedom of will is allowed."  *Id.* at 412.

While Defendants' situation is not as egregious as *Fyan*, the Court declines to find as a matter of law that there was a meeting of the minds between Hofmann and Stahl.  The record contains evidence that Hofmann knew the interest carry provision was important to Stahl.  Because MB&T needed someone to take over Prephan's loan, a reasonable jury could find Hofmann falsely told Stahl the loan contained the no

7

interest provision to convince him to obtain financing from MB&T.  If Hofmann knew the Note did not contain the no interest provision when Stahl agreed to obtain financing from MB&T, there is no meeting of the minds.

### 2.      Leidel's Knowledge Imputed to Stahl

MB&T says a valid contract existed because Leidel, Stahl's attorney-in-fact, knew at closing the Note did not contain an interest carry provision.  According to MB&T, Leidel's knowledge is imputed to Stahl because "the principal is charged with all notice or knowledge, relating to the subject-matter of the agency, which the agent acquires or obtains while acting as such agent and within the scope of his authority."  *Westinghouse Elec. & Mfg., Co. v. Hubert*, 175 Mich. 568, 579 (1913).

Defendants rely on *Mutual Life Ins. Co. of New York v. Hilton-Green*, 241 U.S. 613 (1916) for the proposition that Leidel's knowledge is not imputed to Stahl because Hofmann engaged in unfair dealing.  That case states the underlying reason behind the general rule which imputes an agent's knowledge to the principal: "an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest."  The rule protects individuals who exercise good faith.  It is not a shield for unfair dealing.  *Mutual Life Ins. Co. of New York*, 241 U.S. at 622-23.

The Court cannot find as a matter of law that Leidel's knowledge that the Note did not contain the no interest provision is imputed to Stahl.  When Leidel asked Hofmann if the Note contained an interest carry provision, Hofmann correctly told him "no."  However, there is evidence that within a matter of seconds, Hofmann misrepresented to Leidel that Stahl knew the Note did not contain the no interest provision.  A reasonable jury could find Hofmann engaged in unfair dealing.

8

Because there is a genuine issue of material fact concerning whether the Note is valid, the Court does not reach the issue of whether Jessco of Ohio breached the Note. *See Parson*, 2007 WL 3088588 at *1 (court does not reach the elements necessary to prove a breach of contract claim until plaintiff establishes that a valid contract exists).

MB&T says the parol evidence rule bars Defendants from presenting evidence of Hofmann's alleged oral statements that the Note would contain an interest carry provision. Therefore, Defendants cannot prove there was no meeting of the minds between Stahl and Hofmann when Leidel signed the Note.

The Court need not reach this issue now. A motion for summary judgment simply requires the Court to determine whether Defendants present a genuine issue of material fact for trial, not whether evidence is admissible at trial.

### B.     Breach of the Guaranty (Count II)

To succeed on its claim that Stahl breached the Guaranty, MB&T must prove two elements: (1) Stahl executed the Guaranty; and (2) the obligation guaranteed was defaulted upon. *See Nash Finch Co. v. 2125 Vienna Corp.*, 2008 WL 786804 at *5 (E.D. Mich. March 19, 2008) (citation omitted).

As stated above, there is a genuine issue of material fact regarding the validity of the Note. It necessarily follows that there is a genuine issue of material fact regarding whether Stahl breached the Guaranty. If the Note is not valid, Stahl does not have an obligation to pay the Note. He, therefore, cannot breach that obligation.

## V.     SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS

### A.     Fraudulent Misrepresentation (Count I)

9

To succeed on their fraudulent misrepresentation claim, Defendants must prove: (1) Hofmann made a material representation; (2) the representation was false; (3) when making the representation, Hofmann knew or should have known it was false; (4) Hofmann made the representation with the intention that Leidel would rely upon it; and (5) Leidel reasonably relied upon it and suffered damages.  *See Novak v. Nationwide Mut. Ins. Co.*, 235 Mich.App. 675, 688-691 (1999) (citing *M&D, Inc. v. W.B. McConkey*, 231 Mich.App. 22, 27 (1998)).  Defendants have the burden to prove each element by clear and convincing evidence.  *See Hi-Way Motor Co. v. Int'l Harverster Co.*, 398 Mich. 330, 336 (1976) (citing *Youngs v. Tuttle Hill Corp.*, 373 Mich. 145, 147 (1964)).

MB&T says Defendants' fraudulent misrepresentation claim fails because Leidel did not justifiably rely on Hofmann's alleged misrepresentation that Stahl was aware the Note did not contain an interest carry provision.  According to MB&T, Leidel's failure to confirm the alleged misrepresentation with Stahl shows he did not conduct a reasonable investigation.

In support of its argument, MB&T relies on *Appalachian Railcar Services, Inc. v. Boatright Enterprises, Inc.*, 2008 WL 828112 (W.D. Mich. March 25, 2008).  The court in *Appalachian* said, "before relying on a statement, 'parties must use ordinary caution and make a reasonable investigation before they can be considered to have justifiably relied on the opposing party's misrepresentation.'"  *Appalachian Railcar Services, Inc.*, 2008 WL 828112 at *46 (quoting *Mobil Oil Corp. v. Presto Oil Co.*, 1999 WL 97253 at *4 (6th Cir. Feb. 17, 1999)).

The Court declines to find as a matter of law that Leidel's reliance on Hofmann's statement was not reasonable.  First, *Appalachian Railcar Services, Inc.* is not binding

10

authority.

Second, the record creates a question of fact regarding whether Leidel reasonably relied on Hofmann's statement that Stahl knew the Note did not contain a no interest provision.  Stahl instructed Leidel approximately a month before the closing occurred not to sign the Note if it did not contain the provision.  However, Stahl and Hofmann negotiated the terms of the Note; Leidel was not involved in the negotiation process.  It is possible Stahl could have changed his mind regarding the no interest provision between the time he told Leidel not to sign the Note if it did not contain the provision, and the date of closing.

MB&T relies on *Simon v. Goodyear Metallic Rubber Shoe Co.*, 105 F. 573 (6th Cir. 1900) for the proposition that Defendants waived their fraud claim by making interest payments after they knew about the alleged fraud.  The plaintiff in *Simon* discovered defendant made a fraudulent misrepresentation and asked to be relieved of his duty to perform the contract.  *Simon*, 105 F. at 577.  Defendant refused and demanded plaintiff perform under the contract.  Plaintiff intended to and performed the contract according to its terms.  *Id.*  According to the Court, "[t]he deliberate execution of [the contract] was an adoption of it with knowledge of the deceit, and in contradiction of his purpose to sue for deceit[.]" *Id.* at 580.

Here, there is a question of fact whether Jessco of Ohio and/or Stahl intended to comply with the terms of the Note when they made interest payments on the Note. Indeed, the interest payments were not made until MB&T filed this lawsuit.

The Court need not address Defendants' counterclaim for innocent misrepresentation.  A genuine issue of material fact exists on Defendants' fraudulent

11

misrepresentation claim, and the innocent misrepresentation claim was pled as an alternative to fraudulent misrepresentation.

### B.   Rescission (Count III)

The parties concede that a rescission claim may only proceed if Defendants' claim for fraudulent or innocent misrepresentation is not summarily dismissed; rescission is not an independent cause of action. Because Defendants' claim for fraudulent misrepresentation is not summarily dismissed, Defendants may seek rescission of the contract.

However, Defendants must return the consideration received under the Note before seeking rescission. *See Nat'l R.R. Passenger Corp. v. City of Bloomfield Hills Sch. Dist.*, 2007 WL 496481 at *8 (E.D. Mich. Feb. 12, 2007) (citation omitted).


## V.   CONCLUSION

MB&T's motion is **GRANTED IN PART AND DENIED IN PART**. The Court **GRANTS** MB&T's motion on Defendants' counterclaim for innocent misrepresentation (count II). That claim was pled in the alternative to Defendants' counterclaim for fraudulent misrepresentation.

The Court **DENIES** MB&T's motion on:

(1)     its claims for breach of the Note (count I) and breach of the Guaranty (count II); and

(2)     Defendants' counterclaims for fraudulent misrepresentation (count I) and rescission (count III).

**IT IS ORDERED**.

12

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  January 29, 2009

The undersigned certifies that a copy of this
document was served on the attorneys of
record by electronic means or U.S. Mail on
January 29, 2009.

s/Carol A. Pinegar
Deputy Clerk

13